## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| SINGHAL & COMPANY, INC., | * | |
| **Plaintiff** | * | |
| v. | * | **CIVIL NO. JKB-19-1209** |
| VERSATECH, INC., | * | |
| **Defendant** | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

### MEMORANDUM

Plaintiff Singhal & Company, Inc. ("SCI") filed suit against Defendant VersaTech, Inc. ("VersaTech"), alleging breaches of contract and promissory estoppel. VersaTech moves for partial summary judgment under Federal Rule of Civil Procedure 56 as to Counts I and II of SCI's Complaint based on an affirmative defense of fraudulent inducement. (ECF No. 52.) SCI moves (1) to deem requests for admissions admitted and (2) for attorneys' fees in bringing its motion. (ECF No. 62.) In response, VersaTech requests attorneys' fees for its work in responding to SCI's motion to deem requests for admissions admitted. (ECF No. 63.) No hearing is required. *See* Local Rule 105.6 (D. Md. 2018). For the reasons set forth below, VersaTech's motion for partial summary judgment (ECF No. 52) will be DENIED, and SCI's motion to deem requests admitted will be GRANTED IN PART with respect to requests 10 and 23 and DENIED IN PART with respect to requests 4, 5, 12, 13, 15, 20, 24, 25, 27, and 28 (ECF No. 62). Both parties' motions for

attorneys' fees for the discovery dispute (ECF Nos. 62, 63) will be DENIED without prejudice to reconsideration at a later stage in the proceedings.

## I. *Background*

SCI is an information and technology company that previously qualified as a small business under Section 8(a) of the Small Business Administration ("SBA")'s business development program, 13 C.F.R. § 124.1 *et seq.* (Mot. Part. Summ. J. Mem. Supp. at 1, ECF No. 52-1.) As a Section 8(a) small business, SCI entered into a contract to provide work on the U.S. Food and Drug Administration ("FDA")'s White Oak Campus. (*Id.*) During the term of its contract with the FDA, SCI graduated from its Section 8(a) designation. (*Id.* at 1–2.) The FDA required the prime contractor to qualify as a Section 8(a) business, and accordingly, when the FDA again solicited bids for the services it sought, SCI partnered with VersaTech, a Section 8(a) business, to help it prepare its proposal for the White Oak project. (*Id.*)

VersaTech was awarded the prime contract with the FDA and subsequently entered into a subcontractor agreement (the "subcontract") with SCI on March 6, 2017. (*Id.* at 2.) Under the subcontract, VersaTech issued task orders to SCI, and SCI logged its labor through tickets on VersaTech's timekeeping system. (*Id.* at 3.) The subcontract required that SCI's "personnel meet or exceed the minimum labor category qualification requirements as set forth in the Task Order-SOW" (*id.* at 2 (citing Mot. Part. Summ. J. Ex. 2 at § 12.1, ECF No. 50-4)) and that SCI obtain prior written consent before subcontracting with a third party (Mot. Part. Summ. J. Mem. Supp. at 2 (citing Mot. Part. Summ. J. Ex. 2 at § 22.2)).

SCI had previously subcontracted with Vision Technologies, Inc. ("Vision") when SCI was the prime contractor with the FDA, and—although the parties dispute whether VersaTech gave its written consent—both parties agree that Vision performed work for SCI under implementation

2

task orders pursuant to SCI's subcontract with VersaTech after March 2017 through at least December 2017. (*See* Mot. Part. Summ. J. Mem. Supp. at 2–4; Opp'n to Mot. Part. Summ. J. at 4–5, ECF No. 56.) All told, under a subcontract for which SCI logged around 80,000 hours of work, Vision performed almost 400 hours of labor on service tickets and about 8,407 hours on three implementation task orders. (Mot. Part. Summ. J. Mem. Supp. at 4, 6.)

In an exchange now known as the "Email Agreement,"[1] VersaTech CEO Jason Peay emailed Vineet Singhal, SCI's CEO, in August 2017 to propose that SCI cut its labor rates under the subcontract by 7%. (*Id.* at 4.) Singhal replied that he would agree to reduce SCI's labor rates by 7% if VersaTech would (1) give SCI 49% of the total workshare, and (2) source all implementation materials through SCI. (*Id.*) In the Email Agreement, Singhal did not mention Vision's previous work under the subcontract, nor a future intention on SCI's part to engage Vision as a third-party subcontractor. (*Id.* at 4–5.) Vision continued to perform work on subsequent implementation task orders under the subcontract after the Email Agreement. (*Id.* at 6.)

VersaTech argues that "SCI subcontracted and intended to subcontract with Vision *without* VersaTech's knowledge and certainly without VersaTech's prior written consent," and accordingly, obfuscated Vision's work on implementation task orders in its invoices to VersaTech. (*Id.* at 4–5 (emphasis in original).) For example, VersaTech alleges that for one task order issued shortly after the Email Agreement, SCI subcontracted with Vision to work on the task order but "invoiced VersaTech . . . as if, but for one individual, it had been SCI that had performed all of the labor required." (*Id.* at 5.) As a result, VersaTech argues that it was not aware of SCI's continued engagement of Vision until Peay personally became aware in the second or third quarter of 2018

---

[1] VersaTech continues to dispute whether the Email Agreement amended the terms of the subcontract (*see* Mot. Part. Summ. J. Mem. Supp. at 6), but for the purposes of addressing VersaTech's motion for partial summary judgment on the grounds of fraudulent inducement, the Court assumes *arguendo* that the Email Agreement constituted an amendment to the subcontract.

that Vision was performing labor on service tickets, and realized in the third or fourth quarter of 2018 that Vision was performing labor on implementation task orders. (*Id.* at 5 (citing J. Peay Decl. ¶ 6, ECF No. 49-44).)

SCI responds that "Vision's role on the Project was common knowledge in VersaTech, including among its senior people, like its Program Manager and his superiors, and no contemporaneous objection was raised." (Opp'n to Mot. Part. Summ. J. at 6.) Specifically, SCI alleges that VersaTech's Program Manager and other VersaTech employees were aware of Vision's work on the project "from the moment VersaTech became the prime contractor" because some of them were former SCI employees and that many service tickets explicitly indicated that work would be performed by Vision. (*Id.* at 5.) Further, SCI alleges that a November 2017 progress report that VersaTech sent to the government explained that Vision was working on the project; multiple VersaTech, SCI, and FDA personnel were included on an email exchange with Vision's A/V project management director; and VersaTech's Program Manager told others that VersaTech had entered time performed on service tickets by "SCI's subcontractor, Vision Tech" in December 2017. (*Id.* at 5–6.)

VersaTech filed a motion for partial summary judgment under Federal Rule of Civil Procedure 56, claiming that "SCI fraudulently induced VersaTech to enter into the alleged Email Agreement by failing to disclose the material fact that SCI had *already* subcontracted with Vision in June 2017 and further *intended* to subcontract with Vision in September 2017." (Mot. Part. Summ. J. Mem. Supp. at 8 (emphases in original).) VersaTech argues that SCI's fraud constitutes an affirmative defense, which dooms SCI's breach of contract (Count I) and promissory estoppel (Count II) claims. (*Id.* at 9.)

Separately, SCI moves to deem requests for admissions admitted and for attorneys' fees.

(Mot. Deem Admitted, ECF No. 62.)  With respect to requests 4, 10, 12, 15, 20, and 23, SCI argues that VersaTech's admissions in part "fail to specify what part of the requests are not admitted, and on what basis."  (*Id.* at 1.)  In the alternative, SCI moves to overrule VersaTech's objections to these requests and to compel full responses.  (*Id.*)  With respect to requests 5, 13, 24, 25, 27, and 28, SCI argues that "VersaTech's unqualified denials of the requests contradict the undisputed facts, and VersaTech cannot show any 'reasonable ground to believe that it might prevail on the matter.'"  (*Id.* (citing Fed. R. Civ. P. 37(c)(2)(C)).)  Additionally, SCI moves for attorneys' fees in bringing its motion.  (*Id.*)  In response, VersaTech withdraws its unqualified denials of requests 13 and 25, admits those requests, and withdraws its "legal conclusion" objection to request 24.  (Opp'n to Mot. Deem Admitted at 1, ECF No. 63.)  Otherwise, VersaTech requests that this Court deny SCI's motion and award VersaTech attorneys' fees for its work in responding to SCI's motion.  (*Id.* at 1–2.)

The Court addresses each of these motions in turn.

## II.  *Motion for Summary Judgment*

### A.  *Standard*

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing predecessor to current Rule 56(a)).  The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented and summary judgment should be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The facts themselves, and the

inferences to be drawn from the underlying facts, must be viewed in the light most favorable to the opposing party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008). Still, the opposing party must present those facts and cannot rest on denials. The opposing party must set forth specific facts, either by affidavit or other evidentiary showing, demonstrating a genuine dispute for trial. Fed. R. Civ. P. 56(c)(1). Furthermore, the opposing party must set forth more than a "mere . . . scintilla of evidence in support of [his] position." *Anderson*, 477 U.S. at 252. When a party moves for summary judgment on an affirmative defense, "it must conclusively establish all essential elements of that defense." *Ray Commc'ns, Inc. v. Clear Channel Commc'ns, Inc.*, 673 F.3d 294, 299 (4th Cir. 2012) (citing *Celotex*, 477 U.S. at 331 (1986)).

### B.   Fraudulent Inducement

VersaTech argues that SCI intentionally failed to disclose both that (1) SCI had already subcontracted with Vision, and (2) SCI intended to subcontract with Vision, and as a result, SCI may not recover on its breach of contract and promissory estoppel claims. (Mot. Part. Summ. J. Mem. Supp. at 6, 9.)

Under Maryland law, "[f]raud encompasses, among other things, theories of fraudulent misrepresentation, fraudulent concealment, and fraudulent inducement." *Sass v. Andrew*, 832 A.2d 247, 261 (Md. Ct. Spec. App. 2003) (quoting *Iverson v. Johnson Gas Appliance Co.*, 172 F.3d 524, 529 (8th Cir. 1999)). To prove a common law claim alleging fraud, the moving party must demonstrate:

> (1) the defendant owed a duty to the plaintiff to disclose a material fact;
> (2) the defendant failed to disclose that fact;
> (3) the defendant intended to defraud or deceive the plaintiff;
> (4) the plaintiff took action in justifiable reliance on the concealment; and
> (5) the plaintiff suffered damages as a result of the defendant's concealment.

*EndoSurg Med., Inc. v. EndoMaster Med., Inc.*, 71 F. Supp. 3d 525, 555 (D. Md. 2014) (citing *Green v. H & R Block*, 735 A.2d 1039, 1059 (Md. 1999)).

Establishing a duty to disclose under the first prong generally requires proof of a fiduciary relationship between the parties, but Maryland courts also find fraudulent concealment where a plaintiff demonstrates that "the defendant took affirmative action to conceal the cause of action and that the plaintiff could not have discovered the cause of action despite the exercise of reasonable diligence." *My Nat'l Tax & Ins. Servs., Inc. v. H & R Block Tax Servs. Inc.*, 839 F. Supp. 2d 816, 820 (D. Md. 2012) (quoting *Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 275 (Md. 2007)). As such, "[e]ven in the absence of a duty of disclosure, one who suppresses or conceals facts which materially qualify representations made to another may be guilty of fraud." *See Ademiluyi v. PennyMac Mortg. Inv. Tr. Holdings I, LLC*, 929 F. Supp. 2d 502, 530 (D. Md. 2013) (quoting *Finch v. Hughes Aircraft Co.*, 469 A.2d 867, 888 (Md. Ct. Spec. App. 1984)). Generally, "mere silence is not actionable; but if what is stated amounts to a 'partial and fragmentary' disclosure, that misleads because of its incompleteness, the 'legal situation is entirely changed.'" *Lubore v. RPM Assocs., Inc.*, 674 A.2d 547, 556 (Md. Ct. Spec. App. 1996) (quoting *Brager v. Friedenwald*, 97 A. 515, 523 (Md. 1916)); *see also Tenenbaum v. PNC Bank Nat'l Ass'n*, Civ. No. DKC-10-2215, 2011 WL 2038550, at *8 (D. Md. May 24, 2011) (finding fraud where a defendant purporting to give the plaintiff financial advice "misrepresented [a target business]'s financial state and then withheld the financial information that would have revealed his lie").

SCI was not subject to a duty to disclose Vision's work under the subcontract, and VersaTech fails to establish that SCI made actionable material misrepresentations constituting fraud. First, as contractual partners, SCI and VersaTech are not in a fiduciary or confidential

7

relationship that would trigger a duty to disclose. *See My Nat'l Tax & Ins. Servs. Inc.*, 839 F. Supp. 2d at 820. Likewise, the clause of the subcontract requiring VersaTech's prior written consent for engagement of a third-party subcontractor does not create a duty to disclose under Maryland law. *See Len Stoler, Inc. v. Nat'l Auto Care Corp.*, Civ. No. CCB-08-288, 2009 WL 321642, at *4 (D. Md. Feb. 9, 2009) (explaining that violation of a contractual duty to disclose gives rise to a claim for breach of contract, not fraud). Additionally, the Court is unconvinced by VersaTech's argument that SCI's failure to disclose Vision's work under the subcontract materially qualified SCI's representations in the Email Agreement. (*See* Reply Mem. Supp. of Mot. Part. Summ. J. at 7, ECF No. 60.) Even if VersaTech demonstrated that SCI's representations before and in the Email Agreement were calculated to conceal Vision's work on the project, viewing the evidence in the light most favorable to SCI, there remains a genuine issue of material fact as to whether VersaTech could have discovered Vision's work on the project using "reasonable diligence." *See My Nat'l Tax & Ins. Servs., Inc.*, 839 F. Supp. 2d at 820. As a result, Singhal's omission of this fact is akin to "mere silence," rather than a "partial and fragmentary" disclosure meant to mislead Peay and VersaTech. *See Lubore*, 674 A.2d at 556.

VersaTech fails to conclusively establish that SCI was subject to a duty to disclose, or that in the alternative, SCI made a material misrepresentation constituting fraud under the first prong, so the Court declines to analyze the remaining four elements of fraud under Maryland law. VersaTech's motion for partial summary judgment is DENIED.

### III.    *Motion to Deem Requests Admitted*

SCI moves to deem twelve of its requests for admissions admitted. (Mot. Deem Admitted.) Local Rule 104.7 (D. Md. 2018) requires that counsel make "sincere attempts to resolve" discovery disputes before they are brought to the Court. Being satisfied that SCI's counsel filed the requisite

certificate (*see* Mot. Deem Admitted at 2) detailing counsel's previous efforts to address these issues, the Court proceeds to consider SCI's motion.

A party may submit a request for admission regarding "the truth of any matters within the scope of Rule 26(b)(1) relating to (A) facts, the application of law to fact, or opinions about either; and (B) the genuineness of any described documents." Fed. R. Civ. P. 36(a)(1)(A)–(B). The opposing party may admit, deny in full or in part, or explain that it cannot truthfully admit or deny the request under Rule 36(a)(4), which provides:

> If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest. The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.

The responding party may object to a request for admission under Federal Rule of Civil Procedure 36(a)(5) if it states a "legitimate basis for doing so." *Lynn v. Monarch Recovery Mgmt., Inc.*, 285 F.R.D. 350, 363 (D. Md. 2012). Claiming solely that "the request presents a genuine issue for trial" does not constitute a permissible ground for objection. Fed. R. Civ. P. 36(a)(5). In *Lynn*, the court explained that a party could, for example, object to a request for admission on the grounds that it "exceeds the scope of discovery" under Rule 26(b)(1); "require[s] disclosure of attorney-client privileged or work product protected material" under Rule 26(b)(3); or "is defective in form and therefore unanswerable" under Rule 36(a)(2). 285 F.R.D. at 363. In responding to requests for admission, "objections must be specific, non-boilerplate and supported by particularized facts where necessary to demonstrate the basis for the objection." *Hall v. Sullivan*, 231 F.R.D. 468, 470 (D. Md. 2005).

When a party's response to a request for admission does not conform to the requirements of Rule 36, a court may deem the request admitted or order the responding party to serve an amended answer. Fed. R. Civ. P. 36(a)(6). "A court may deem a matter admitted when the objecting party's answers are evasive or fail to respond to the substance of the question, and the evidence establishes that the request should have been admitted." *U.S. E.E.O.C. v. Balt. Cnty.*, Civ. No. L-07-2500, 2011 WL 5375044, at *2 (D. Md. Nov. 7, 2011) (citing *S. Ry. Co. v. Crosby*, 201 F.2d 878, 880–81 (4th Cir. 1953)). As the Eastern District of Virginia explained:

> Gamesmanship in the form of non-responsive answers, vague promises of a future response, or quibbling objections can result in the request being deemed admitted or in a post-trial award of monetary sanctions *without* prior opportunity to correct the deficiency. . . . If the responding party finds the wording of a request for admission imprecise, he should set forth a qualified answer that fairly meets the substance of the request. Requests for admission are not games of 'Battleship' in which the propounding party must guess the precise language coordinates that the responding party deems answerable.

*House v. Giant of Md., LLC*, 232 F.R.D. 257, 262 (E.D. Va. 2005) (emphasis in original) (internal citations omitted).

Any motion to deem requests for admissions admitted, however, must be viewed in light of the purpose of requests for admission: "to narrow the array of issues before the court, and thus expedite both the discovery process and the resolution of the litigation." *Adventis, Inc. v. Consol. Prop. Holdings, Inc.*, 124 Fed. App'x 169, 172 (4th Cir. 2005). As such, "the federal courts express their concern when [requests for admission] breed additional litigation because one party is dissatisfied with the answer of the other." *Nat'l Semiconductor Corp. v. Ramtron Int'l Corp.*, 265 F. Supp. 2d 71, 74 (D.D.C. 2003). Although requesting parties may challenge the good faith of responding parties' responses, courts decline to evaluate the *bona fides* or truthfulness of responses to requests for admission, which would "encourage[] more litigation, the converse of the purpose behind permitting one party to demand the other to admit the truth of a certain statement." *Id.* at

74–75 ("Hence, the validity, or *bona fides*, of a qualified answer to a request for admission must await the trial to see if the party forced to prove what was not admitted can meet the requirements of that rule.").

### A.  Requests for Admission 4, 10, 12, 15, 20, and 23

SCI argues that requests for admission 4, 10, 12, 15, 20, and 23 should be deemed admitted because VersaTech's responses to these requests "fail to specify what part of the requests are not admitted, and on what basis." (Mot. Deem Admitted at 1.)  In the alternative, SCI asks the Court to "overrule VersaTech's objections and to compel VersaTech to respond in full to these requests that VersaTech has admitted only 'in part.'" (*Id.*)  SCI explains that "[b]ased on the narrative portions of VersaTech's answers, it looks like VersaTech admits everything, and SCI is unable to understand what VersaTech intends to deny," and as a result, "they should be deemed to be admissions." (*Id.* at 3–4.)  The Court considers each request in turn.

#### 1.  Request for Admission 4

SCI's request 4 states: "After subcontracting SCI, VersaTech hired multiple of SCI's employees, so that they could continue to perform services on the contract under VersaTech's workshare in compliance with the limitation on subcontracting." (Mot. Deem Admitted Ex. D at 4, ECF No. 62-6 (internal citation omitted).)  VersaTech objects to this request on the grounds that it is "overbroad because the request fails to identify any relevant time period during the performance of the Subcontract Agreement," and it is "vague and ambiguous because the request fails to specify which SCI employees VersaTech hired." (*Id.* at 5 (internal citation omitted).)  Beyond those objections, VersaTech "admits this request in part that VersaTech hired multiple of SCI's employees." (*Id.*)  VersaTech further explains that the parties "agreed on a staffing plan to

11

transition some of SCI's employees to VersaTech to assist in the performance under the Subcontract" and that the employees were hired "under the circumstances referred to in this answer." (*Id.*) VersaTech states that it "otherwise denies this request." (*Id.*)

The Court finds that VersaTech's response to request 4 complies with the requirements of Federal Rule of Civil Procedure 36(a)(4), which explains that a qualified answer "must specify the part admitted and qualify or deny the rest." By elaborating the extent to which VersaTech admits SCI's request and stating that it denies the rest, VersaTech followed the letter of the Rule. Accordingly, the Court does not reach SCI's argument that VersaTech's objections to this request should be overruled, and the Court DENIES SCI's motion to deem request 4 admitted, or in the alternative, to compel an answer.

### 2.  *Request for Admission 10*

SCI's request 10 states: "In fact, Jason Peay's reference to 'new subK's' meant new task orders with revised labor rates." (*Id.* at 6 (internal citation omitted).) VersaTech also objects to this request as "vague and ambiguous because the request fails to specify where and when Mr. Peay refers to 'new subK's'" and "because the request fails to explain the terms 'new task orders' and 'revised labor rates.'" (*Id.* at 6.) VersaTech further answers that it "denies this request in part," noting that "Mr. Peay testified during his deposition that 'new subK's' referred to '[m]odifying task orders' and 'updat[ing] the task orders' to reflect the lower labor rates." (*Id.* at 6–7 (internal citation omitted).)

VersaTech's response to request 10 is a quintessentially evasive answer that "fail[s] to respond to the substance of the question." *U.S. E.E.O.C.*, 2011 WL 5375044, at *2. VersaTech argues that "Mr. Peay stated that 'new subK's' meant modifying and updating task orders—he did not stat [sic] anything about new task orders," but does not explain why this distinction is

12

material. (*See* Opp'n to Mot. Deem Admitted at 7.) Because Mr. Peay's deposition testimony

establishes that this request should have been admitted (*see* Mot. Deem Admitted Ex. F at 101:8–

103:6, ECF No. 62-8), the Court GRANTS SCI's motion to deem request 10 admitted.

### 3. *Request for Admission 12*

SCI's request 12 states: "Following Mr. Silver's email confirming 'assumption of the

agreement,' in a spreadsheet exchanged between VersaTech managers and SCI managers, the

parties rebalanced workshare between VersaTech and SCI to bring SCI's labor workshare close

to 49% under the 'new model' (allowing room for future allocation of small tasks)." (Mot.

Deem Admitted Ex. D at 7.) VersaTech objects to this request as "vague and ambiguous because

the request fails to identify what 'spreadsheet' was exchanged" and "because the request fails to

define the term 'workshare.'" (*Id.*) In response, VersaTech

> denies this request in part that the parties rebalanced workshare between VersaTech
> and SCI to bring SCI's labor workshare close to 49% under the 'new model'. In
> the August 8–23, 2017 email exchange between SCI and VersaTech employees, the
> parties discussed a general approach to transitioning to a 51%–49% workshare split
> on current and upcoming implementation and operation task orders; however, given
> the complexity this transition [sic], the parties created an excel chart for proposed
> workshare *only* for current operations task orders, which did not include current
> implementation task orders or upcoming operations and implementation task
> orders. Accordingly, the parties did not fully 'rebalance[] workshare' because they
> still had to consider workshare on current implementation task orders and upcoming
> operations and implementations task orders.

(*Id.* at 7–8 (emphasis in original).)

VersaTech's response to request 12 constitutes an acceptable qualified admission under

Rule 36(a)(4) because it provides details addressing the substance of the request. Accordingly,

SCI's motion to deem request 12 admitted is DENIED.

### 4. *Request for Admission 15*

SCI's request 15 states: "Lee Jones, VersaTech's Program Manager, and Brian Coleman,

another manager for VersaTech, were aware of SCI's use of Vision Technologies, LLC

('Vision') as a lower-tier subcontractor." (*Id.* at 9.) VersaTech likewise objects to this request

as "vague and ambiguous because the request fails to specify (a) how Mr. Jones or Mr. Coleman

were aware of Vision and (b) a time period when they became aware of Vision." (*Id.*)

VersaTech responds that it "admits this request in part" because "Mr. Jones transitioned to

VersaTech in April or May 2017 . . . and, based on his prior time as an SCI employee, he knew

that SCI subcontracted with Vision" and "Mr. Coleman did not start at VersaTech until October

2017 and became aware of Vision 'sometime in 2017.'" (*Id.*)

In defining the temporal scope of its admission, VersaTech's response to request 15

constitutes "a qualified answer that fairly meets the substance of the request," *see House*, 232

F.R.D. at 262, and as such, the Court DENIES SCI's motion to deem this request admitted.

### 5. *Request for Admission 20*

SCI's request 20 states: "VersaTech's CEO, Jason Peay, was personally aware of SCI's

use of Vision as a subcontractor no later than 'in approximately the second or third quarter of

2018. . . .'" (Mot. Deem Admitted Ex. D at 11 (internal citation omitted).) VersaTech objects to

the request under Rule 36(a)(1) "because the request does not seek to have VersaTech admit the

truth of '(A) facts, the application of law to fact, or opinions about either;' or '(B) the

genuineness of any described documents.'" (*Id.*) Nonetheless, VersaTech states that it "admits

this request in part that Mr. Peay was personally aware of SCI's use of Vision as a subcontractor

in '*approximately* the second or third quarter of 2018'" and "VersaTech otherwise denies this

request." (*Id.* (emphasis added).)

14

VersaTech's response properly qualifies its admission to request 20. Indeed, "no later than" and "approximately" are not synonymous, and VersaTech's answer permissibly clarifies the timing of Mr. Peay's awareness of Vision's work as a third-party subcontractor. *See House*, 232 F.R.D. at 262. As such, the Court DENIES SCI's motion to deem request 20 admitted.

### 6.  *Request for Admission 23*

SCI's request 23 states: "VersaTech continued to accept the benefit of SCI's services, including the 7% reduction in SCI's labor rates, through at least September 20, 2019." (Mot. Deem Admitted Ex. D at 12.) VersaTech again objects that the request was "vague and ambiguous because the request does not specify what 'services' VersaTech continued to accept from SCI." (*Id.*) VersaTech explains that it "admits this request in part" and that "[n]o new task orders were issued to SCI after September 2019; however, SCI still performed warranty-related services for which SCI had been paid for under prior task orders past September 2019." (*Id.*)

VersaTech's response to request 23 is evasive. Although VersaTech admits the request only in part, nothing in its answer contradicts the request. The Court GRANTS SCI's motion to deem request 23 admitted.

### B.  *Requests for Admission 5, 13, 24, 25, 27, and 28[2]*

SCI argues that the Court should deem requests for admission 5, 13, 24, 25, 27, and 28 admitted because they "are of 'substantial importance' to the case" under Rule 37(c)(2)(B) and "are so clearly established by undisputed evidence that VersaTech has no 'reasonable ground to believe that it might prevail on the matter' or 'other good reason' for its denials" under Rule

---

[2] In response to SCI's motion to deem requests for admission admitted, VersaTech withdraws its unqualified denials of requests 13 and 25, admits those requests, and withdraws its "legal conclusion" objection to request 24. (*See* Opp'n to Mot. Deem Admitted at 1, ECF No. 63.) SCI argues that "[b]ecause VersaTech offers no substantial justification for denying these requests in the first place and for not taking advantage of the multiple opportunities that SCI gave to change its answers," the Court should award SCI attorneys' fees with respect to requests 13 and 25. (Reply Mem. Supp. of Mot. Deem Admitted at 1, ECF No. 64.) The Court considers all of SCI's requests for attorneys' fees below, *infra* § III.C.

37(c)(2)(C)–(D).  (Mot. Deem Admitted Mem. Supp. at 11.)  The Court considers each request in turn.

### 1.  Request for Admission 5

SCI's request 5 states: "VersaTech did not obtain 'prior written consent' from Vineet Singhal or any other principal of SCI before hiring any of SCI's employees." (Mot. Deem Admitted Ex. D at 4.)  VersaTech objects that the request was "vague and ambiguous because the request fails to specify what section of the Subcontract requires VersaTech to seek SCI's 'prior written consent' before hiring any SCI employee" and "overbroad because the request fails to identify any relevant time period." (*Id.*)  Otherwise, "VersaTech denies this request." (*Id.*)

SCI's motion to deem request 5 admitted asks the Court to consider the truthfulness of VersaTech's response, which the Court declines to do at this stage in the proceedings.  *See Nat'l Semiconductor*, 265 F. Supp. at 74–75.  Accordingly, the motion to deem request 5 admitted is DENIED.

### 2.  Request for Admission 13

VersaTech withdraws its unqualified denial and admits request 13 (Opp'n to Mot. Deem Admitted at 1), so the Court DENIES AS MOOT SCI's motion to deem this request admitted.

### 3.  Request for Admission 24

SCI's request 24 states: "VersaTech did not provide SCI with 49% of the labor workshare 'across all the OPS and IMPL labor for the duration of the contract.'" (Mot. Deem Admitted Ex. D at 12 (internal citation omitted).)  VersaTech objects that the request was "vague and ambiguous because the request fails to describe the '49% of the labor workshare'" and because it "seeks a legal conclusion." (*Id.*)  VersaTech otherwise denies the request. (*Id.*)  In its response

16

to SCI's motion, VersaTech withdrew its objection on legal conclusion grounds.  (Opp'n to Mot. Deem Admitted at 1.)

SCI's motion to deem request 24 admitted asks the Court to consider the truthfulness of VersaTech's response, which the Court declines to do at this stage in the proceedings.  *See Nat'l Semiconductor*, 265 F. Supp. at 74–75.  Accordingly, the motion to deem request 24 admitted is DENIED.

### 4.  *Request for Admission 25*

VersaTech withdraws its unqualified denial and admits request 25 (Opp'n to Mot. Deem Admitted at 1), so the Court DENIES AS MOOT SCI's motion to deem this request admitted.

### 5.  *Request for Admission 27*

SCI's request 27 states: "For the majority of the more than 300 invoices submitted by SCI to VersaTech, VersaTech made payment more than 60 days after submission of the invoice." (Mot. Deem Admitted Ex. D at 13.)  VersaTech objects to the request as "vague and ambiguous because the request fails to specify which invoices are included in the 'more than 300 invoices submitted by SCI to VersaTech'" and "overbroad because the request fails to identify the relevant time period." (*Id.*)  VersaTech denies the request. (*Id.*)

SCI asks that the Court defer ruling on this request after VersaTech claimed in its response to SCI's motion that "[b]ased on VersaTech's own records, VersaTech made payment more than 60 days after submission of the invoice on less than 50% of the invoices." (Reply Mem. Supp. of Mot. Deem Admitted at 13, ECF No. 64 (quoting Opp'n to Mot. Deem Admitted at 16).)  Accordingly, the Court DENIES SCI's motion to deem request 27 admitted.

17

### 6. *Request for Admission 28*

SCI's request 28 states: "VersaTech did not track when it received payment for services provided by SCI, and therefore does not know how many SCI invoices it paid more than 7 days after it received payment for such services." (Mot. Deem Admitted Ex. D at 13.) VersaTech again objects on the grounds that the request was "overbroad because the request does not identify a relevant time period" and "vague and ambiguous because the request fails to specify 'services provided by SCI' or 'SCI invoices.'" (*Id.*) VersaTech wholly denies this request. (*Id.*)

SCI's motion to deem request 28 admitted asks the Court to consider the truthfulness of VersaTech's response, which the Court declines to do at this stage in the proceedings. *See Nat'l Semiconductor*, 265 F. Supp. at 74–75. Accordingly, the motion to deem request 28 admitted is DENIED.

### C. *Attorney's Fees*

At this stage in the proceedings, the Court DENIES without prejudice to later reconsideration on motion both SCI and VersaTech's requests for attorneys' fees (*see* Mot. Deem Admitted at 1; Opp'n to Mot. Deem Admitted at 2) accrued in addressing these discovery issues.

### IV. *Conclusion*

For the foregoing reasons, an Order shall enter DENYING VersaTech's motion for partial summary judgment (ECF No. 52); GRANTING IN PART SCI's motion to deem requests 10 and 23 admitted (ECF No. 62); DENYING IN PART SCI's motion to deem requests 4, 5, 12, 13, 15, 20, 24, 25, 27, and 28 admitted (ECF No. 62); and DENYING both parties' requests for attorneys'

fees for the discovery dispute without prejudice to reconsideration on motion at a later stage in the

proceedings (ECF Nos. 62, 63).

DATED this __/5__ day of October, 2020.

BY THE COURT:

James K. Bredar
Chief Judge